## PROSECUTION UNDER THE STATE AUTOMATIC COUPLER ACT.

Common Pleas Court of Jackson County.

STATE OF OHIO V. DETROIT, TOLEDO & IRONTON RAILWAY COMPANY.

Decided, October, 1908.

*Constitutional Law—Application of the State and Federal Automatic Coupler Acts—State and Interstate Traffic—Each Car a "Unit"— Present Use of a Car Controls—98 O. L., 75.*

1. The federal law providing for automatic couplers on cars moving interstate traffic and the state law providing for automatic couplers on cars moving state traffic are not contradictory or in conflict, and the constitutionality of the state statute (98 O. L., 75) can not be successfully attacked on that ground.

2. It is not the train, but the car complained of, that is the unit which these statutes seek to control, and the fact that a large proportion of the cars in a train are loaded with interstate traffic does not prevent the application of the state statute to a car or cars in the same train which are loaded with state traffic; nor is it the common use, but rather it is the present use of a car which controls, and an allegation that the car complained of is commonly used in interstate traffic can not save it from the operation of the state statute when at the time alleged it was being used within the state for the transportation of state traffic.

*W. H. Miller*, Assistant Attorney-General, and *Evan E. Eubanks*, Prosecuting Attorney, for plaintiff.

*Smith & Robbins*, for defendant.

The authorities cited on behalf of the State in support of the demurrer to the answer in this case were:

As to the right of the state to exercise this police power in the regulation of the speed of interstate trains within city limits, 161 U. S., 677; in the regulation of rates within state limits, 95 U. S., 155; in establishing a rule of evidence, 169

U. S., 311; in enforcing track connections between railways, 179 U. S., 287.

As to the exclusive power of Congress with respect to commerce itself and the subordinate power of the states over the instrumentalities of such commerce, 161 U. S., 677; 169 U. S., 613; 102 U. S., 211; 102 U. S., 541; 154 U. S., 204.

As to conflict between the federal and state statutes, 129 Fed. Rep., 522.

Possession of a federal coasting license does not authorize ferriage in violation of state laws, 11 Mich., 43; 108 Mo., 550; 1 Black (Ky.), 603; 107 U. S., 365.

State laws for organizing militia are valid unless in conflict with national legislation on that subject, 5 Wheat., 1.

As to punishment for counterfeiting or passing counterfeit money, 1 Doug. (Mich.), 207; 5 How., 410; 9 How., 560; 5 Leigh, 707; 18 Grat., 933; 14 How., 13.

As to the amendment to the federal act, *United States* v. C. & N. Ry., decided Dec. 30, 1907, and *Howard* v. *Railway*, decided October, 1907.

The Legislature has all power not expressly denied to it by the Constitution, Cooley's Constitutional Limitations, 200.

An act can not be set aside as against public policy or natural right, *Probasco* v. *Raibes*, 50 O. S., 378.

As to the construction of statutes relating to commerce, 113 U. S., 727, and 59 Amer. Rep., 247.

MIDDLETON, J. (orally).

This is an action brought to recover a penalty of one hundred dollars provided for by an act passed by the General Assembly of this state, on the 19th day of March, 1906, found in 98 volume of the Ohio Laws, page 75, which act provides:

"That it shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any locomotive, car, tender, or similar vehicle used in moving state traffic, not

equipped with couplers coupling automatically by impact, and which can be uncoupled, without the necessity of men going between the ends of cars.''

.. The petition, in substance, alleges that the defendant company is a corporation organized under the laws of the state of Michigan, and is engaged in operating a line of railroad from the city of Detroit, in said state, to city of Ironton, in this state, and that the line of said railroad company passes through this county.

It alleges further that on or about the 17th day of January, 1907, the defendant company hauled upon this line of railroad, in its business as a common carrier in this county, a certain railroad car, to-wit, No. 4161; said car being then and there used for moving state traffic in train second 54; said car being deficiently equipped so that the same could not be uncoupled from the other cars of said train without the necessity of a man going between the end of said car and the end of the other cars of said train, etc.  The petition prays, therefore, for judgment against the defendant in the sum of one hundred dollars.

Now, it will be noticed in this connection that this petition brings the case clearly within the provisions of the state law which I have just read, the operative fact of the petition being that this car in question was then and there used for moving state traffic.

The defendant company has filed an answer to this petition, and for a first defense sets up, in substance, that it was at the time complained of in the petition a common carrier engaged in the business of interstate commerce and that its line of railroad and all its locomotives and cars, including the car described in the petition, are and *were commonly used and engaged* in interstate traffic.  That is the first defense.

The second defense, in addition to what I have already stated, sets up that other cars in the train—this second 54 train described in plaintiff's petition—were actually loaded with traffic consigned from points in this state to points in another state.

Now, the claim of the defendant company upon these two defenses is, in substance, that it is within the exclusive power of

Congress to regulate traffic between the states, as well as the instrumentalities of such traffic, which would include, of course, cars, locomotives and trains, and that therefore in the case where a common carrier is engaged in interstate traffic, as distinguished from state traffic, all its cars, locomotives, and other agencies of traffic are withdrawn from the control of the state and come under the control of Congress alone, and that this act of the state of Ohio, in so far as it seeks to control these agencies, is unconstitutional and void.

In 1893 the Congress of the United States passed an act similar to the state act I have just read, which provides, in Section 2 thereof:

"That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier [that means railroad companies engaged in interstate commerce] to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

It will be observed that these two laws, the state law and the federal law, are practically identical in defining the subjects sought to be controlled by their provisions, and if it were true, as claimed here by the defendant company, that the car in question in this case comes within the provisions of this act of Congress, and under the conditions specified in said act, it will not be questioned, I think, that the state law can not apply. In other words, there can be no dual control of this car in question by the state and federal government at the same time.

Now, very elaborate briefs have been filed by counsel for the defendant company, as well as the Attorney-General of this state and the prosecuting attorney of this county on behalf of the plaintiff, and it seems that the question involved in this case is regarded by all parties as a very important question.

I have very carefully examined the authorities cited by counsel upon both sides, as well as the authorities which I have been able to find myself, and from all the authorities examined,

I have concluded that under the federal law, before there can be a violation thereof, it must appear:

First. That the car in question must be in actual use as an *instrument of interstate traffic,* as distinguished from state traffic; or,

Second. It must be shown that it was the intention of the common carrier to so use the car.

Now, I think these two propositions are clearly shown by the federal authorities under this statute. Take for instance the 196 U. S., p. 1, the cause of *Johnson* v. *Southern Pacific Company.* In that case the court holds that it was not necessary that the car involved in that case should actually be engaged in interstate movement, but if it appears sufficiently that it was the intention of the defendant company to so use the car, it is a violation of the federal statute, if the car is not equipped as that statute requires.

In this connection it must be further observed that these two laws, by their very terms, do not apply to anything more than a car or single agency, and that they do not apply to trains. The train is not the "unit," in other words, which the two statutes seek to control; it is the car, and it can readily be seen that a case will frequently arise in which a part of a single train will be devoted to interstate commerce, and the remainder of that train will be devoted to state traffic.

In order then to give the federal statute that scope and application which the defendant claims in this case, the court would be compelled to apply the statute not to the separate car, but to the train as a whole. I do not think, and I so hold, that the statute intends anything of that sort.

It is the purpose of both laws—both the federal laws and the state law—to apply solely to a single car or instrument of commerce, and the use or intended use of the particular car in question must determine which law applies. These two laws are not contradictory or conflicting in their terms. There is nothing in the language of the state law which conflicts in any way with any of the provisions of the federal law, or by its

language undertakes to control the same thing which federal law controls.

The language of the federal law is, "any car used in moving interstate traffic." The language of the state law is, "any car used in moving state traffic," and that the state has the right to control in cases of state traffic is recognized by the federal courts. Take for instance the case reported in the 116 Fed. Rep., 873, the case of *Voelker* v. *Chicago, M. & St. P. Ry. Co.* The court says in construing the federal statutes:

"Legislation on this matter of the use of automatic couplers was sought and obtained from Congress, as well as from state legislatures so that companies would not be afforded a loophole for escape from liability on the theory that the agencies used in interstate commerce are without the control of the state legislation."

This language clearly implies the conclusion that because today these agencies might come under the provisions of the federal law, it does not necessarily follow that tomorrow the same instrumentalities, the same agencies, the same cars, might not come under the state law. That which determines which law should apply, is the use or intended use of each particular car at each particular time. The federal courts are always particular to qualify every expression by limiting it to interstate traffic.

The court further says in this case:

"When companies are engaged in interstate traffic, it is their duty under the act of Congress not to use *in connection with such traffic,* cars not equipped as required by that act."

It necessarily follows that if the same companies are at the same time engaged in state traffic, it is their duty, under the state law, not to use in connection with state traffic, cars which are not equipped as required by the state law. It is the present use of the car that controls, not the general character of the train in which the car may be, nor the general character or nature of the business in which the common carrier is engaged.

In this case it was held that it was not necessary in order to bring the car within the provisions of the federal statute, that

it be actually in use as the agency of interstate commerce, but it was sufficient if it appeared that it was designed, or intended by the common carrier to use it for that purpose. So that I am of the opinion that these two statutes do not conflict in any way, and that the only case, after thinking the matter over, in which there might be a serious question for the court, would be a case in which a car was loaded partly with state traffic and partly with interstate traffic. Now, that might occur. It might occur upon the line of the defendant company in this case, and it probably might happen that this company, along the northern part of its line in this state, would place in some car that was partly loaded with traffic designed for some point in Michigan, some article or some merchandise that was designed for some point in the state of Ohio.

In that case the court would then have this question to meet, but not under the facts as they appear in this case.

The petition alleges that this car in question was being used for moving state traffic. Neither the first nor second defenses in the answer denies this, but 'the defendant simply claims that this car *was commonly* used in interstate traffic, as well as all of its other cars and locomotives. It is not the common use of the car which determines the question. As I said before, it is the present use of the car, or the present intended use of the car which controls. The defendant says in the second defense there were a number of cars in the train which were being then used for interstate traffic. But it is of no consequence to what use all the other cars in that train were being put. The court is only dealing with the car described in the petition.

Now, for a third defense, the defendant alleges that it had in its employ a sufficient number of competent inspectors, whose duty it was to properly inspect all cars and equipment, and that said inspectors went over and inspected this train, and all cars and equipment were in good repair and condition. I think this defense is very fully covered by the case of *Wellston Coal Co.* v. *Smith,* found in 65 O. S., pp. 70 and 76.

The demurrer to the answer, and to each defense of the answer, will be sustained.